**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>In re CLST Enterprises, LLC,<br><br>                              Debtor. | **NOT FOR PUBLICATION**<br><br>No. 24-10596 (MG)<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER GRANTING THE CHAPTER 11 TRUSTEE'S MOTION TO APPROVE TERMS AND CONDITIONS OF SALE OF DEBTOR'S PROPERTY, TO APPROVE THE RETENTION OF MALTZ AUCTIONS AS AUCTIONEER FOR THE ESTATE, AND OVERRULING OBJECTION OF CARL THOMPSON**

*A P P E A R A N C E S:*

RIMON P.C.
*Counsel to Chapter 11 Trustee Kenneth P. Silverman*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
 By:    Brian Powers, Esq.
           Courtney M. Rowan, Esq.

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
*Counsel to 75 Street Servicing LLC*
200 West 41st Street, 17th Floor
New York, NY 10036-7203
 By:    Tracy L. Klestadt, Esq.
           Brendan M. Scott, Esq.

RONALD D. WEISS P.C.
*Counsel to Carl Thompson*
445 Broadhollow Road
Suite CL-10
Melville, NY 11747
 By:    Ronald D. Weiss, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court in the above-captioned chapter 11 case (the "Chapter 11 Case") is the Motion (the "Motion," ECF Doc. # 63) of Kenneth P. Silverman, Esq., solely in his capacity as Chapter 11 Trustee ("Trustee") of the estate of CLST Enterprises, LLC ("Debtor"), for entry of an order:

1. Authorizing and approving terms and conditions of sale of the Debtor's real property, free and clear of all liens, claims and encumbrances;
2. Establishing auction and notice procedures;
3. Providing for the removal of all occupants and personal property remaining in the real property; and
4. Granting related relief.

Also pending is the Application to employ Maltz Auctions, Inc. as auctioneer for the estate. ("Maltz Application," ECF Doc. # 62.)

On March 20, 2025, counsel for Carl Thomson filed an Objection to the Motion (the "Objection," ECF Doc. # 68), asserting that the filing of the bankruptcy petition was not properly authorized and that the proposed sale violates 11 U.S.C. § 363, and seeking denial or adjournment of the Motion. The Trustee filed a Reply in Further Support of the Motion on March 24, 2025 (the "Reply," ECF Doc. # 70).

For the reasons discussed below, the Court **GRANTS** the Motion, **APPROVES** the Auction Sale, **APPROVES** the Maltz Application, and **OVERRULES** Mr. Thomson's Objection.

2

I. **BACKGROUND**

**A. Prior History**

1. The Debtor and the Bankruptcy Filing

On April 8, 2024 (the "Petition Date"), a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code was filed on the Debtor's behalf in this Court (the "Petition," ECF Doc. # 1.) The Debtor has a 100% ownership interest in the real property known as and located at 19 E. 75th Street, New York, New York 10021 (the "Real Property"). (Motion ¶ 4.) The sole principals of the Debtor are Carl Thomson ("Carl") and Margaret Thomson ("Margaret," and together with Carl, the "Principals"[1]). (*Id.* ¶ 5.) The Principals are married and are each fifty (50%) members of the Debtor. (*Id.*)

2. The Real Property

The Trustee represents that the Debtor is the 100% owner of the Real Property, a multistory building. (Motion ¶ 4.) The Principals reside on the upper three floors of the Real Property and do not pay rent to the Debtor. (*Id.* ¶ 5.)

The Trustee submits that, based on information available to the Trustee and an "informal liquidation analysis performed by the Trustee's retained professionals," the Real Property may "have value." (Motion ¶ 6.) The Debtor's secured creditor, 75 Street Servicing LLC (the "Secured Creditor") has agreed to a stipulation pursuant to section 506(c) of the Bankruptcy Code to provide for a carve-out to the Debtor's estate to facilitate a sale of the Real Property, "even if the sales process concludes and no equity exists in the Real Property." (*Id.*)

---

[1] Because the Principals are spouses who share the same surname, this Opinion uses first names when referring to them in abbreviated fashion.

3

3. <u>Appointment of Trustee</u>

In January of 2025, the Court directed the appointment of a Chapter 11 Trustee for the Debtors. (*See* ECF Doc. # 53.) By order dated January 6, 2025, the Court approved and noticed the appointment of Kenneth P. Silverman, Esq. as the Chapter 11 Trustee for the Debtor and its estate. (*See* ECF Doc. ## 56-57.)

**B. Relief Requested**

The Trustee seeks entry of the Sale Procedures Order (attached as Exhibit B to the Motion): (a) authorizing the Trustee to conduct a public auction sale of the Debtor's right, title and interest in and to the Real Property (the "Auction Sale"); (b) approving the proposed Terms of Sale (attached as Exhibit A to the Motion); (c) approving the form, time and scope of the notice of the Auction Sale (the "Notice Procedures," and together with the Terms of Sale, the "Sale Procedures,"); (d) scheduling a hearing to confirm the results of the Auction Sale (the "Sale Confirmation Hearing") following the Auction Sale; and (e) directing the Principals to vacate the Real Property to enable marketing and sale efforts, and authorizing the Trustee (under the supervision of the United States Marshal) to effectuate the removal of the Principals if they do not voluntarily vacate the premises. (Motion ¶¶ 17, 20, 40.)

The Trustee claims that the sale of the Real Property should provide a significant benefit to the estate and its creditors, and that the proposed Sale Procedures will advance the Trustee's efforts to maximize the net value realized from sale of the Real Property. (Motion ¶¶ 23-25, 32.) The Trustee separately claims that the removal of the Principals and their personal property from the Real Property (the "Removal") is necessary to maximize value to the estate through the completion of the Auction Sale. (Motion ¶¶ 40-41.)

4

### C. Proposed Sale Procedures

The salient provisions of the proposed Terms of Sale are set forth in ¶ 10 of the Motion and/or Exhibit A thereto:

a. The Auction Sale will be conducted virtually on a date to be scheduled by the Trustee. (Exhibit A to Motion ¶ 2.) Bidding will be scheduled to close 72 hours after it opens; however, if a bid is placed with less than one minute remaining, the bidding period will be extended until there are no higher bids placed within the final one minute prior to the close of the Auction Sale. (*Id.*)

b. To be eligible to bid on the Real Property, each prospective bidder must, before the commencement of the Auction Sale, deliver to the Trustee or to Maltz Auctions, Inc. (the "Auctioneer"): (a) by wire transfer, certified check, or bank check payable to "Kenneth P. , Esq., Chapter 11 Trustee" in the amount of two hundred and ninety thousand dollars ($290,000) ("Qualifying Deposit"), which shall serve as a partial good faith deposit against payment of the purchase price for the Real Property, which shall be equal to the successful bid submitted at the Auction Sale. (*Id.* ¶ 3.)

c. At the conclusion of the Auction Sale, the bidder who the Trustee determines to have made the highest or best bid for the Real Property highest bidder (the "Successful Bidder") and the bidder who the Trustee determines to have made the highest or best bid for the Real Property (the "Second Highest Bidder") must also execute, and thereby agree to be bound by, the Terms of Sale and a Memorandum of Sale. (*Id.* ¶ 6.)

d. The Auction Sale will be subject to a buyer's premium (the "Buyer's Premium") of 4% of the gross sales price of the Real Property. The Buyer's Premium will be added to the final sale price and will be payable by the Successful Bidder of the Real Property. (*Id.* ¶ 4.)

e. Within 48 hours after the conclusion of the Auction Sale, the Successful Bidder shall deliver to the Trustee by bank check or wire transfer an amount equal to 10% of the Purchase Price minus the Qualifying Deposit, plus the Buyer's Premium. (*Id.* ¶ 5.)

f. The Closing of the transaction must occur within thirty (30) days after entry by the Order by the Bankruptcy Court approving the sale of the Real Property to the Successful Bidder, **TIME BEING OF THE ESSENCE as to the Successful Bidder**. However, the Closing Date may be extended solely by the Trustee. The Closing

        shall take place on or before the Closing Date at the offices of the attorneys for the Trustee, Rimon P.C., 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753.  (*Id.* ¶ 7.)

    g.  The Property is being sold **"AS IS" "WHERE IS," "WITH ALL FAULTS,"** without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear from any and all liens or adverse claims to title, of whatever kind or nature.  (*Id.* ¶ 14.)

    h.  The Trustee shall deliver the Real Property to the Successful Bidder or the Second Highest Bidder vacant of tenancies and/or leaseholds.  (*Id.* ¶ 17.)

The Trustee proposes that the Motion and all exhibits annexed thereto be provided to the following parties to satisfy the Trustee's notice requirements under Bankruptcy Rules 2002(c) and 6004: (i) the Debtor and its counsel; (ii) the Principals; (iii) the Office of the United States Trustee for Region 2; (iv) the appropriate taxing authorities; (v) those persons or entities who have formally appeared and requested service in the Chapter 11 Case pursuant to Bankruptcy Rule 2002; (vi) all parties who have expressed an interest in the Real Property, if any; and (vii) all other creditors of the Estate.  (Motion ¶ 12.)  The Trustee also submits that the Auctioneer will engage in marketing efforts including publishing notice of the Auction Sale by email broadcast, on real estate and auction-specific web sites, on the Auctioneer's website, in newspapers and other publications, and by contacting known interested parties.  (*Id.* ¶ 15.)

Finally, the Trustee seeks the scheduling of a Sale Confirmation Hearing no later than ten (10) days following the Auction Date.  (*Id.* ¶ 17.)  Prior to the Sale Confirmation Hearing, the Trustee anticipates supplementing the Motion with evidence that the bidders at the Auction Sale acted in good faith and deserve the protections of a good faith purchaser afforded by Bankruptcy Code § 363(m), and that the Real Property be sold free and clear of any liens pursuant to Bankruptcy Code § 363(f).

6

### D. Objection

On March 20, 2025, counsel for Carl Thomson filed an Objection to the Motion, arguing that the Motion should be denied because: (1) as a 50% member of an LLC, Carl did not have adequate authority to commence this Chapter 11 Case on behalf of the LLC; (2) Margaret Thomson, the other 50% member of the Debtor LLC, lacked the mental capacity to authorize the filing of the Petition; and (3) as proposed, the Auction Sale overlooks Margaret Thomson's interests and therefore violates Section 363. (Objection at 2-4, 6-7.)

### E. Reply

On March 24, 2025, the Trustee filed a Reply in support of the Motion, characterizing the Objection as a "transparent attempt by the Debtor's Principals to forestall an inevitable conclusion to the saga of litigation relating to the Real Property." (Reply ¶ 1.) The Trustee argues that Carl was authorized by the LLC's Operating Agreement to file the Petition and cannot now argue otherwise. (*Id.* ¶¶ 3-6.) The Trustee further asserts that any provision in the Operating Agreement which would restrict the Debtor from filing for Chapter 11 relief is unenforceable. (*Id.* ¶¶ 7-11.) The Reply characterizes the allegations regarding Margaret's mental capacity as a "red herring," as her consent was not required to authorize the commencement of the Chapter 11 Case, and it contends that the appointment of a guardian would not broaden Margaret's rights as to the Real Property. (*Id.* ¶¶ 12-15.) Finally, the Trustee contests Carl's assertion that the Sale Procedures do not sufficiently account for the "uniqueness" of the Real Property, and the Trustee reiterates that the relief requested in the Motion is specifically designed to enable the Trustee to maximize the value of the Real Property through a successful Auction Sale. (*Id.* ¶¶ 18-19.)

7

## II. LEGAL STANDARD

### A. General Order M-383: Amended Guidelines for the Conduct of Asset Sales

The United States Bankruptcy Court for the Southern District of New York has established amended guidelines (General Order M-383, the "Guidelines") for the conduct of asset sales under 11 U.S.C. § 363(b). The Guidelines establish the necessary components of a Debtor's application to conduct asset sales, including a Sale Motion, Sale Order, Sale Procedures, and a Sale Procedures Order, along with additional detailed information described within each of the sections. A debtor applying for this Court's approval of asset sales must comply with General Order M-383.

### B. Sale of Debtor's Assets under Section 363(b)

"[T]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In approving a transaction conducted pursuant to section 363(b)(1), the courts consider whether the debtor exercised sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 144-45 (2d Cir. 1992) (approving sale of assets based on a finding that sound business judgment supported sale because delay in the sale of assets may diminish their value); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1072 (2d Cir. 1983) (holding that the sale of assets out of the ordinary course of business must be supported by "some articulated business justification, other than appeasement of major creditors" and that "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application"). Once the Trustee articulates a sound business justification, there "is a presumption that in making a business decision the [decision maker] acted on an informed basis, in good faith and in the honest belief that the action was in

8

the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (citation omitted).

A determination that there are sufficient business reasons to justify a particular sale depends on the facts and circumstances of each particular case. *In re Lionel Corp.,* 722 F.2d at 1072. However, courts should consider factors such as: (1) the proportionate value of the asset to the estate as a whole, (2) the amount of time elapsed since the filing, (3) the likelihood of proposing and confirming a plan in the near future, (4) the effect of the proposed sale on any reorganization, (5) the sale price to be obtained with reference to any appraisals of the property, (6) alternative uses of the property, and (7) whether the asset is increasing or decreasing in value. *Id.* at 1071.

### C. Sale of Assets Free and Clear of Liens under Section 363(f)

Bankruptcy Code section 363(f) states that a sale free and clear of liens may be approved only if at least one of the following conditions are met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (6) such entity could be compelled to accept a monetary satisfaction of such interest. 11 U.S.C. § 363(f). According to *In re Dundee Equity Corp.*, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992), the sale of interest may proceed "if any of the five conditions of § 363(f) have been met."

### D. Protections to Good Faith Purchasers under Section 363(m)

Bankruptcy Code section 363(m) states that "The reversal or modification of an appeal or an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect

9

the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale…were stayed pending appeal." 11 U.S.C. § 363(m). The Second Circuit has held that "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings . . . A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or any attempt to take grossly unfair advantage of other bidders.'" *Licensing by Paola v. Sinatra (In re Gucci),* 126 F.3d 380, 390 (2d Cir. 1997) (citations omitted).

### E. Exemption from Transfer Taxes under Bankruptcy Code § 1146(c)

Section 1146(c) of the Bankruptcy Code provides that "the transfer . . . or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(c).

### III. DISCUSSION

The Court **APPROVES** the Sale Procedures for several reasons and **OVERRULES** the Objection of Carl Thomson. First, the Motion complies with the Guidelines. Second, the Trustee has articulated a sound business reason for the Auction Sale. Third, the Trustee has satisfied the requirements of Section 363(f) to sell the property free and clear of all assets. Fourth, the eventual purchaser is entitled to the good faith protections under Section 363(m). Fifth, exemption from transfer taxes is appropriate. Finally, the Removal of the Debtor's Principals from the Real Property is necessary to maximize the value arising out of the Auction Sale.

### A. Compliance with the Guidelines

As required by the Guidelines, the Motion includes a copy of the proposed order, information about the qualifications of bidders, and as recommended by the Guidelines, accounts for a back-up bidder in the event the highest bidder is not able to consummate the sale. (*See* Guidelines at §§ I.A, B.3.) Further, as recommended by the Guidelines, the Terms of Sale require that all bidders who participate in the auction provide a good faith deposit in the amount of $290,000. (*Id.* § B.2.d.) Accordingly, the Motion complies with the Guidelines.

### B. Articulation of a Business Justification

As required, the Trustee has articulated a sound business purpose for the Auction Sale. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The Trustee states that the Sale Procedures are designed to ensure that the Debtor's estate receives the maximum benefit from the sale of the Property on a reasonable timetable given the circumstances of the case. (Motion ¶¶ 23-25, 32.) The Real Property constitutes nearly all of the Debtor's estate. (Petition at 7.) Additionally, the Trustee expects to file a chapter 11 plan for the Debtor in the next forty-five (45) days, and represents that the confirmation of the plan will be conditioned upon the closing of the sale of the Real Property and will provide for the disbursement of the sale proceeds to creditors. (Motion ¶ 38.)

The Court should not "double guess" the Trustee's judgment without specific justification, "as business judgment of the estate representative is entitled to great deference." *See In re Borders Grp., Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011). Carl's observation that the Real Property is "unique" and therefore deserving of adequate sale and marketing procedures does not suffice to undermine the legitimate business purpose for the Auction Sale articulated by the Trustee.

### C. Sale of Assets Free and Clear of Liens Under Section 363(f)

The Trustee has satisfied the requirements of Section 363(f) and should be permitted to sell the property free and clear of all liens and interests. One of the grounds for selling a property free and clear is that lien holder consents. 11 U.S.C. § 363(f)(2). Here, the Debtor's Secured Creditor has approved the Trustee's proposed process for the Auction Sale. (Reply ¶ 18.)

The Trustee is also permitted to sell the property free and clear of all interests, including non-lien interests. *See In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (holding that the absence of express authority to sell assets free and clear of claims poses no impediment to the sale). Accordingly, the Trustee is entitled to sell the Real Property free and clear of any alleged leasehold or tenancy interests in the property. Section 363(f) is satisfied here because all parties in interest will have notice and an opportunity to object. A failure to object generally constitutes consent to sale for the purposes of Section 363(f). *See, e.g., FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002) (failure to object may constitute consent, if there was adequate notice); *Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343 (E.D. Pa. 1988) (finding implied consent under similar circumstances). Further, even if a party's failure to object is not found to constitute consent under Section 363(f), the requirements of the statute are also satisfied if there is a "*bona fide* dispute" about the validity of the interest. 11 U.S.C § 363(f). Therefore, even if the Principals or other entities contest the Sale at the hearing or otherwise, Section 363(f)(2) is satisfied given the existence of is a *bona fide* dispute as to the Principals' interest in the Real Property.

### D. Good Faith Protections Under Section 363(m)

The Trustee, who will be conducting the Auction Sale, anticipates selecting the highest and best bidder as the Successful Bidder for the purchase of the Real Property. (Motion ¶ 10(c); (Exhibit A to Motion ¶ 6.) The Trustee has reason to believe that the Successful Bidder will be acting in good faith since the Auction Sale will be conducted at arm's length, with an opportunity for competitive bidding by qualified bidders. Accordingly, approval of the Motion will adequately afford the Successful Bidder the protections available under section 363(m) of the Bankruptcy Code.

### E. Proper Notice Has Been Provided

The Debtors' Motion complies with the Guidelines. The Trustee articulates the specific information noticed by the Motion, and proposes to file and serve an additional notice of the scheduled Auction Date and location, and the date of the Sale Confirmation Hearing, once the Removal has been effectuated. (Motion ¶ 13; *see* Guidelines § I.4.D.16.) The Trustee has also given the required 21 days' notice of the Auction Sale as required by Bankruptcy Rules 2002(c) and 6004(a). Accordingly, notice is proper.

### F. Removal of the Principals is Appropriate

The Trustee adequately articulates the necessity for the requested provision in the proposed order requiring the Removal of the Debtors' Principals from the Real Property. The Trustee annexes a declaration setting forth the substantial history involving the Principals, who are alleged to have engaged in "belligerent and non-cooperative behavior" regarding the Real Property for over a decade, including as to sale and marketing efforts during the pendency of this Chapter 11 Case. (Motion ¶ 42; Exhibit C to Motion.) Under these circumstances, it is clear that the Trustee will not be able to maximize the value of the Debtor's estate if he is not able to

13

market and deliver the Real Property vacant as part of the Auction Sale. Accordingly, Removal of the Principals and their personal property from the premises of the Real Property is necessary and appropriate.

### G. The Objection Is Overruled

Finally, Carl Thomson's Objection to the Motion is **OVERRULED**. Carl contends that he was not authorized by the Debtor's Operating Agreement to file the Petition as a 50% owner of the Debtor LLC, and that the entire Chapter 11 Case should therefore be dismissed as improperly authorized. Carl signed the Chapter 11 petition in 2024 initiating this case. (Petition at 36.) He has for the first time raised the issue of his authority to initiate this case in opposition to the pending Motion. The Trustee offers a number of responses to this argument, including that the Debtor's Amended and Restated Operating Agreement, dated June 9, 2014 (the "Amended Operating Agreement," Exhibit A to Objection), which was signed by both Carl and his wife Margaret, authorize Carl, as Manager, to initiate this Chapter 11 Case, and that any provisions restricting his ability to do so are unenforceable. A review of the Amended Operating Agreement shows that Carl, and Carl alone, had the authority to sign the Chapter 11 Petition initiating this Chapter 11 Case. Both Carl and Margaret signed the Amended Operating Agreement appointing Carl as Manager. (Amended Operating Agreement at Article III (Manager), Section 3.1.) This gave Carl the authority, acting alone, to "do all other things . . . to administer and carry on the affairs, assets and business of the Company . . . ." (*See* Amended Operating Agreement at Article III (Manager), Section 3.3(d) (authorizing Carl to act on behalf of CLST)). Additionally, Section 3.4 of the Amended Operating Agreement provides that "the Manager shall have and may exercise on behalf of the Company all powers and rights necessary, proper, convenient and advisable to effectuate and carry out the purposes, business and

14

objectives of the Company." (Amended Operating Agreement at Article III (Manager), Section 3.4.) As the Trustee notes, Carl signed a number of documents in this Chapter 11 Case, including a certification of his own authority to initiate bankruptcy proceedings on behalf of the Debtor. (Reply ¶ 1; ECF Doc. # 2). Carl's signature on these documents is tantamount to a ratification of the Chapter 11 Case. *See, e.g.*, *In re Beck Rumbaugh Associates, Inc.*, 49 B.R. 920 (Bankr. E.D. Pa. 1985); *In re Gas Reclamation, Inc.*, 51 B.R. 860 (Bankr. S.D. Tex. 1985); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 42 Bankr. Ct. Dec. 77 (Bankr. D. Or. 2003); *In re Dearborn Process Service, Inc.*, 149 B.R. 872 (Bankr. N.D. Ill. 1993).

The Objection also suggests that Margaret, the other 50% owner of the Debtor LLC, did not have the requisite mental capacity to consent to the filing of the Petition. However, notably, the Objection was not filed on behalf of Margaret, and this argument is made for the first time in Carl's response to the pending Motion in an apparent effort to forestall the sale of the Real Property. Finally, as discussed, under the Terms of the Amended Operating Agreement*,* Carl did not require Margaret's consent to authorize the filing of the Petition on behalf of the Debtor. Accordingly, the Court rejects the assertion that Margaret's mental capacity should hinder approval of the Auction Sale and Sale Procedures.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion, **APPROVES** the Auction Sale, **APPROVES** the Maltz Application, and **OVERRULES** the Objection of Carl Thomson.

**IT IS SO ORDERED.**

Dated:    March 27, 2025
            New York, New York

                                                                                    */Martin Glenn/*
                                                                        MARTIN GLENN
                                                                Chief United States Bankruptcy Judge

15