UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

In re:

In re CLST Enterprises, LLC,

Debtor.

No. 24-10596 (MG)

Chapter 11

## MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION OF UST, IN PART, AND APPROVAL FEES OF WEINBERG ZAREH MALKIN PRICE LLP, AS MODIFIED, AND APPROVAL OF FEES OF VERNON CONSULTING, INC.

*A P P E A R A N C E S:*

WEINBERG ZAREH MALKIN PRICE LLP
*Counsel to Debtor CLST Enterprises, LLC*
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
By:    Adrienne Woods, Esq.
       Todd Duffy, Esq.

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York 10004
By:    Mark Bruh, Esq,

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

In this Opinion, the Court addresses two fee applications.  The United States Trustee

("UST") objects to both applications.  The most serious issue concerns the objection of the UST

to the fee application of Debtor's counsel—Weinberg Zareh Malkin Price LLP ("WZMP")—that

that received two separate retainer payments each in the amount of $30,000.  The first $30,000

retainer was paid pre-petition by Karl Tomson, debtor's principal, and was properly disclosed;

the second $30,000 retainer payment was paid post-petition and was <u>not</u> properly disclosed.  The

UST seeks disgorgement of the second $30,000 retainer and disallowance of WZMP's entire fee application. The UST has other objections to entries in the application. As explained below, the Court orders WZMP to disgorge the $30,000 second retainer payment to the Chapter 11 Trustee. The Court also rules on the other objections to the applications.

## I.   **BACKGROUND**

Pending before the Court is the *First and Final Application of Weinberg Zareh Malkin Price LLP* (the "Weinberg Application," ECF Doc. # 91), the *Proposed Order Granting the First and Final Fee Application of Weinberg Zareh Malkin Price* (the "Proposed Order," ECF Doc. # 92), the *Application for Final Professional Compensation for Vernon Consulting* Inc. (the "Vernon Application," ECF Doc. # 90), the *Objection of the U.S. Trustee to the First and Final Fee Applications for Allowance of Compensation for Professional Services Rendered and Reimbursement of Expenses for: (I) Weinberg Zareh Malkin Price LLP for the Period of April 8, 2025 Through June 12, 2025. and (II) Vernon Consulting Inc, for the Period of April 8, 2025 Through June 12, 2025* (the "UST Objection," ECF Doc. # 98), the *Declaration of Adrienne Woods, in Response to Objection of the Office of the U.S. Trustee to First and Final Fee Application of Weinberg Zareh Malk Price LLP*, (the "Woods Declaration," ECF Doc. # 100) and the *Declaration of Laura W. Patt in Response to Objection of the Office of the U.S. Trustee to First and Final Fee Application of Vernon Consulting, Inc.* (the "Patt Declaration," ECF Doc. 99.)

### A.  Case Background

On April 8, 2024 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. (*See Chapter 11 Voluntary Petition*, ECF Doc. # 1.) The Debtor is a limited liability company owned by Carl Thomson and

his wife Margaret Thomson, fifty percent (50%) each. (Weinberg Application ¶ 2.)  The sole

asset of the Debtor is a townhouse located at 19 East 75th Street in Manhattan (the "Property").

(*Id.* ¶ 3.)

The Debtor commenced this case on an exigent basis to stave off a foreclosure

proceeding by 75 Street Servicing LLC (the "Lender"), its secured creditor, and obtain the

benefit of a breathing spell to either obtain take-out financing or to find a purchaser willing to

purchase the Property for an amount that would enable the Debtor to realize a net profit.  (*Id.* ¶

5.)

On May 18, 2024, the Debtor filed an application to retain and employ WZMP as its

counsel (ECF Doc. # 25).  (*Id.* ¶ 6.)  On June 12, 2024, the Court entered its *Order Authorizing

the Retention and Employment of Weinberg Zareh Malkin Price LLP as Counsel to Debtor

Effective as of the Petition Date* (the "Retention Order," ECF Doc. # 41).  (*Id.*)

The Debtor was unable to accomplish either of its goals and on January 2, 2025, the

Court entered an Order Directing Appointment of Chapter 11 Trustee (ECF Doc. # 53), and, on

January 6, 2025, the Office of the United States Trustee filed its Notice of Approval of

Appointment of Trustee appointing Kenneth P. Silverman, Esq. as Trustee.  (*Id.* ¶¶ 7-8.)  WZMP

has continued to work with the Chapter 11 Trustee following his appointment.  (*Id.* ¶ 9.)

**B.  U.S. Trustee's Objection**

On August 4, 2025, the William K. Harrington, the United States Trustee for Region 2

filed an objection to the fee applications of WZMP and Vernon Consulting Inc (the "UST

Objection," ECF Doc # 98).  The UST Objection notes that WZMP was paid two retainers, each

totaling $30,000, one a previously disclosed pre-petition retainer paid by Karl Thomson, and the

other a post-petition retainer paid from the estate's bank account that was <u>not</u> disclosed to this

Court until July 12, 2025, in a supplemental declaration (the "Supplemental Declaration," ECF

Doc. # 97).  (UST Objection ¶¶ 5, 13.)  Ms. Woods, an attorney at WZMP, stated "[o]n June 11,

2025 (sic), the Debtor's principal Carl Thomson paid an additional retainer of $30,000." (UST

Objection ¶ 13; Supplemental Declaration ¶ 3.)  That statement was false; the payment was made

from the estate's bank account without timely disclosure or approval by the Court.

The UST objects to the following fees:

| Professional | Fees | Expenses |
|---|---|---|
| Weinberg, Zareh, Malkin, Price LLP | $44,212.50 | $787.00 |
| Vernon Consulting, Inc. | $5,400 | $0.00 |

In addition to objecting all of WZMP's fees, the UST also objects to the reasonableness

of specific entries of the time requests of WZMP.  The UST objects to the below fees on, *inter*

*alia*, grounds of vagueness, lumping, and lack of benefit to the estate.  (UST Objection at 13-14.)

The specific time entries the UST objects to are listed below.

| Date | Name | Hours | $ Amount | Narrative | Objection |
|---|---|---|---|---|---|
| 5/6/24 | Adrienne Woods | 1.4 | 945 | Represent client at 341 Meeting, post-meeting, debrief with client representative | Lumping |
| 5/13/24 | Todd Duffy | 2.3 | 1,552.50 | Draft application to retain broker and associated documents | Lumping; vague |
| 5/18/24 | Adrienne Woods | 2.3 | 1,552.50 | Review motion and revise opposition to trustee motion | Lumping |
| 10/25/24 | Todd Duffy | 2.2 | 1,485 | Draft retention application and declaration for real estate counsel | Never filed; no benefit to the estate |
| 12/3/24 | Todd Duffy | .5 | 337.50 | Communications with proposed real estate counsel for Carl | Application never filed; no benefit to the estate; vague |

| 1/2/25 | Adrienne Woods | .3 | 202.50 | Review and respond to emails with MB, TK re appointment of chapter 11 trustee | After appointment of chapter 11 trustee; no benefit to the estate |
|---|---|---|---|---|---|
| 1/3/25 | Adrienne Woods | .3 | 202.50 | Review order appointing trustee and forward to client | After appointment of chapter 11 trustee; excessive time; no benefit to the estate |
| 1/6/25 | Adrienne Woods | .4 | 270 | Conf w/newly appointed chapter 11 trustee regarding case, assets and related matters | After appointment of chapter 11 trustee; no benefit to the estate |
| 1/9/25 | Adrienne Woods | .3 | 202.50 | Conf w/KS re proposed meeting with CT and counsel | After appointment of chapter 11 trustee; no benefit to the estate |
| 1/9/25 | Adrienne Woods | .2 | 135 | Emails and calls to CT's new counsel re appointment of chapter 11 trustee | After appointment of chapter 11 trustee; no benefit to the estate |
| 1/13/25 | Adrienne Woods | 1.0 | 675 | Conf w/ KS, BP, client, client's proposed real estate appellate counsel re case status and next steps | After appointment of chapter 11 trustee; no benefit to the estate; vague |
| 1/14/25 | Adrienne Woods | .1 | 67.50 | Review and respond to email from ch 11 trustee's counsel re administrative expenses | After appointment of chapter 11 trustee; no benefit to the estate |
| 1/30/25 | Adrienne Woods | .3 | 202.50 | Conf w/ KS re site visit and related matters | After appointment of chapter 11 trustee; no benefit to the estate |
| 6/3/25 | Adrienne Woods | 7 | 4,725 | Time spent preparing fee application and anticipated time | Applicant is billing for "future" services; dollar |

| | | | | spent (4.5) preparing for and appearing at hearing on same (2.5) | amount in excess of 3-5% rule |
|---|---|---|---|---|---|

With respect to Vernon Consulting, Inc.'s fees, the UST Objects to the below listed fees.

| **Date** | **Name** | **Hours** | **$ Amount** | **Narrative** | **Objection** |
|---|---|---|---|---|---|
| 4/19/24 | LWP | .3 | 135 | Call with potential realtors | Vague; outside scope of services |
| 7/29/24 | LWP | 1.9 | 855 | Preparation of June MOR | Never filed; no benefit to the estate |

(*Id.* at 14.)

### C.  Woods Declaration

WZMP begins its response to the UST Objection by noting that it disclosed the post-petition payment in the *Chapter 11 Operating Report for the Month Ending in 5/31/2024* (the "May MOR," ECF Doc. # 46).  (Woods Declaration ¶ 7.)  WZMP recognizes it should have filed a supplemental declaration pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), but notes it was not trying to deceive creditors, as it was disclosed in the May MOR.  (*Id.* ¶ 8.)  WZMP then discusses the cases cited by the UST and seeks to differentiate those cases from the instant case before the Court.  (*Id.* ¶¶ 11-19.)

WZMP then argues the post-petition retainer satisfies the standard provided by the UST in its objection.  (*Id.* ¶ 20.)  The UST cites the test which states that "[i]n determining whether a post-petition retainer may be warranted, courts often look to, among other things, the following criteria: (1) the retainer's economic impact on the debtor's ongoing business operation; (2) the amount and reasonableness of the retainer; (3) the reputation of debtor's counsel; and (4) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should the

court determine that the fees paid to counsel are not justified." *See In re Truong*, 259 B.R. 264, 267 (Bankr. D.N.J. 2001). It appears that WZMP is attempting to shoehorn approval of the post-petition retainer into the Woods Declaration and the Weinberg Application.[1] WZMP claims the post-petition retainer did not impact the Debtor's ongoing business and is reasonable in light of the services provided. (*Id.* ¶ 21.) The post-petition retainer is currently held in WZMP's IOLTA account. (*Id.*)

With respect to the unfiled MORs, WZMP does not contest that some of the MORs were late or never filed. However, WZMP claims it was very difficult to obtain the cooperation of Mr. Thomson who refused to sign the June Monthly Operating Report (the "June MOR") prepared by Vernon Consulting. (*Id.* ¶¶ 22-23.)

### D. Patt Declaration

Vernon Consulting filed the Patt Declaration in support of the Vernon Application. The Patt Declaration responds to the UST Objection's characterization of its time entries.

First, the Patt Declaration claims the April 19, 2024 time entry is not vague or outside the scope of Vernon Consulting's duties. (Patt Declaration ¶ 6.) Vernon Consulting contends that it must rely of industry specific experts to provide "sound estimates of values to be used in its calculations" and that these estimates were used to determine potential strategy outcomes regarding the Debtor's reorganization. (*Id.*) Therefore, Vernon Consulting claims its conversations with potential realtors provided a benefit to the estate.

Second, the Patt Declaration rejects the UST's characterization of the July 29, 2024, time entry regarding the preparation of the June MOR as not providing a benefit to the Debtor's

---

[1]    WZMP does not formally request approval in the Weinberg Application. Instead, the argument in the Woods Declaration appears to be the first time WZMP has put forth an argument indicating the post-petition retainer would satisfy the UST's proposed standard for post-petition retainers. Yet, WZMP does not formally request approval of the post-petition retainer.

estate.  (*Id.* ¶ 7.)  Following up on the representations of WZMP in the Woods Declaration,

Vernon Consulting states that the "unsolicited, vile, disrespectful, and highly inflammatory

onslaught of communications by one of Debtor's principals, which created difficult barriers and

impeded the typical workflow, thus hampering any expected progress in this case.  To suggest

otherwise is not equitable and is disingenuous."  (*Id.* ¶ 9.)

Vernon Consulting further claims that the relevant standard is section 330(a)(3)(c) of the

Bankruptcy Code and that the services rendered were "were necessary to the administration of,

or beneficial ***at the time at which the service was rendered*** toward the completion of, a case

under this title.  (*Id.* ¶ 7 (emphasis added).)  Vernon Consulting claims the June MOR was

necessary to the administration of the Debtor's estate at the time the service was rendered, even

though the June MOR was never filed, and asks the Court to reject the UST's argument.  (*Id.*)

## II.    <u>LEGAL STANDARD</u>

The court may award fees to professionals under section 330 of the Bankruptcy Code.  11

U.S.C. § 330.  Section 330 provides in relevant part:

> After notice to the parties in interest and the United States Trustee
> and a hearing, and subject to sections 326, 328 and 329, the court
> may award . . .
>
> > (A) reasonable compensation for actual, necessary services
> > rendered by the trustee, examiner, ombudsman, professional
> > person, or attorney and by any paraprofessional person
> > employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

In determining reasonable compensation, section 330 directs the court to consider:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;

8

(C) whether the services were necessary to the administration of, or beneficial at the time which the services were rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In the Second Circuit, the "necessary" standard in section 330 is given a broad interpretation. Services are "necessary" if they benefit the estate. *In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009); *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). The test considers whether services provided were "reasonably likely to benefit the estate." The test is objective, considering the services that a reasonable lawyer would have performed in the same circumstances. *In re Ames Dept. Stores, Inc.*, 76 F.3d 66 (2d Cir.1996).

## A.  Post-Petition Retainers & Rule 2016 of the Federal Rules of Bankruptcy Procedure

Sections 330 and 331 of the Bankruptcy Code require court approval of any professional fees prior to payment. While section 328(a) authorizes the employment of professionals "on any reasonable terms and conditions . . . including a retainer," the burden is on the applicant to establish that the payment of a post-petition retainer is warranted. *Cal Inland*, 124 B.R. at 553; *see also In re Jefferson Business Center Associates*, 135 B.R. 676, 679 (D. Colo. 1992).

Failure to comply with section 329 and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel. *In re Chatkhan*, 496 B.R. 687, 695 (Bankr. E.D.N.Y. 2012)

(collecting cases).  While a more "technical breach" of the attorney's obligations under the

Bankruptcy Code and the Bankruptcy Rules may not warrant denial of all compensation, a

finding of willfulness is not required; "[d]isgorgement may be proper even though the failure to

[comply with the Code and Rules] resulted . . . from negligence or inadvertence." *Id.* (quoting

*Vergos v. Mendes & Gonzales PLLC (In re McCrary & Dunlap Const. Co., LLC),* 79 Fed. Appx.

770, 779 (6th Cir.2003) (alteration in original)).  This disclosure obligation is mandatory and not

permissive and is central to the integrity of the bankruptcy process.  *In re Level 8 Apparel LLC*,

No. 16-13164 (JLG), 2023 WL 2940489, at *8 (Bankr. S.D.N.Y. Apr. 13, 2023).

> Disclosure of compensation pursuant to § 329 and Rule 2016(b) is mandatory, not permissive. The Bankruptcy Code requires fee disclosure so that courts can prevent overreaching by debtors' attorneys and give interested parties the ability to evaluate the reasonableness of the fees paid. Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

*In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013) (cleaned up).

Fee applications must also comply with Rule 2016, which requires "a detailed statement

of (1) the services rendered, time expended, and expenses incurred, and (2) the amounts

requested."  FED. R. BANKR. P. 2016.  Bankruptcy Rule 2016 requires disclosure of any

payments previously made to the applicant and of the existence of any compensation agreement

between the applicant, their client and any third party who will share the compensation.  (*Id.*)

"The duty of disclosure imposed by Rule 2016(b) is a continuing one.  If a debtor's attorney

subsequently receives funds, the attorney must make the required disclosure by supplementing

any prior disclosure."  9 *Collier on Bankruptcy* ¶ 2016.17, at 2016–20.

Additionally, S.D.N.Y. Local Bankruptcy Rule 2016-1 requires that professionals seeking

compensation or reimbursement "comply with the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases

promulgated by the Court." (S.D.N.Y. BANKR. R. 2016-1.)  The Amended Guidelines

referenced by Rule 2016-1 provide "clear and concise procedures for compensation and

reimbursement expenses." (*See* S.D.N.Y. BANKR. R. 2016-1 Guidelines, *available at*

http://www.nysb.uscourts.gov/sites/default/files/2016-1-a-Guidelines.pdf.)

The Amended Guidelines require certifications by the professional responsible for

compliance with the guidelines that the fee application has been read, that the application and the

fees therein comply with the guidelines, that the fees are billed at rates customary to the

applicant and generally accepted by the applicant's clients, and that the applicant does not make

a profit on the service provided. (*Id.* at 5.)  The application must also contain certifications of

service upon and approval of the fee application by the trustee, the debtor, or the chair of each

official committee. (*Id.*)  These certifications must contain a list of all professionals and

paraprofessionals working on a given case, aggregate hours spent by each professional, and "a

reasonably detailed breakdown of the disbursements incurred and an explanation of billing

practices." (*Id.*)

### B.  Amended Guidelines for Fees and Disbursements for Professionals in S.D.N.Y. Bankruptcy Cases, General Order M-447 (the "SDNY Guidelines")

Vague characterizations of the services performed by the claimant, such that a court

cannot adequately scrutinize them, are routinely disallowed. *See In re Hirsch*, 2008 WL

5234057, at *8 (Bankr. E.D.N.Y. 2008) ("Entries that contain such vague characterization of the

services performed as 'meeting with,' 'conversations with', 'review materials or docket' and

'draft correspondence to' fail to adequately describe the services provided and are routinely

disallowed.").  A preeminent example of an inadequate entry in a time-record are those that have

been block-billed; a practice where multiple activities are lumped together in one vague time-

block.  Block-billing hinders a court from assessing the reasonableness of the tasks at hand and allows professionals to lump in tasks which are not compensable.  (*Id.* at *5.)  When block-billing is substantial, like with other vague time-keeping records, courts in this Circuit and other jurisdictions will generally disallow total requested fees in varying percentages ranging from 5% to 100%.  *Id.* at *5-6; *In re Baker*, 374 B.R. 489, 495 n.7 (Bankr. E.D.N.Y. 2007).  Such across the board percentage cuts in the fees claimed are routinely utilized by bankruptcy courts.  *See In re Tribeca Mkt.*, LLC, 516 B.R. 254, 281 (S.D.N.Y. 2014) (citing *In re Baker*, 374 B.R. at 496).

To enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific and the records must clearly identify each discrete task billed.  *In re Baker*, 374 B.R. at 494 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming for hours that are 'redundant, excessive, or otherwise unnecessary.'"); *see also In re Bennett Funding Grp.*, 213 B.R. 234, 244 (Bankr. N.D.N.Y 1997) ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow for such services.").  Such vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible."  *In re Hudson*, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007); *see also In re CCT Commc'ns, Inc.*, No. 07-10210 (SMB), 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010) (disallowing time entries referring to telephone calls and emails without identifying the subject matter of the call or email, referring to preparation of draft letters without identifying the subject matter, and referring to vague description such as "work on fee application" or "attention to Vlahos's request"); *In re Fibermark, Inc.*, 349 B.R. 385, 396–97 (Bankr. D. Vt. 2006).

### C.  Time Spent Preparing Fee Applications

Because fee applications are required under the Bankruptcy Code, courts may award fees for time spent actually preparing a fee application "based on the level and skill reasonably required to prepare the application."  11 U.S.C. § 330(a)(6).  "It is proper . . . for the bankruptcy court to examine the amount and value of the time spent preparing the [fee] application, and reasonable limits may be placed on compensation for such work."  *In re Mesa Air Grp.*, *Inc.*, 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (Glenn, J.) (quoting *In re Bennett Funding Grp.*, *Inc.*, 213 B.R. 234, 249 (Bankr. N.D.N.Y. 1997)).  While there is no clear-cut cap on the permissible amount charged for the preparation of fee applications, "the 3–5% range is a useful metric."  *In re Mesa Air Grp., Inc.*, 449 B.R. at 445.

The Court "has an independent duty to review fee applications" and evaluate the compensation requested.  *In re Keene*, 205 B.R. at 695.  The Court "may reduce or disallow a request if the underlying services conferred no real benefit on the estate."  (*Id.* at 696.)  The Court may also reduce compensation if the request is based on incomplete or inaccurate time records.  *See In re Hamilton Hardware Co.*, 11 B.R. 326 (Bankr. E.D. Mich. 1981) (denying an application seeking additional attorney's fees "where time records submitted by counsel did not meet test of adequacy.").

### III.    DISCUSSION

### A.  WZMP Post-Petition Retainer

Although WZMP did not file a supplemental declaration disclosing the payment of the post-petition retainer until July 12, 2025, WZMP did note the payment of the post-petition retainer in the May MOR.  (May MOR at 13-14.)  Failure to disclose a retainer in compliance with the Bankruptcy Code and Bankruptcy Rule 2016(b) is not satisfied or excused by disclosing

the retainer in other filings.  *In re Chatkhan*, 496 B.R. at 695 n.9; *see In re TJN, Inc.,* 194 B.R.

400, 402–404 (Bankr. D. S.C. 1996) (concluding that counsel's failure to file a supplemental

Bankruptcy Rule 2016(b) statement was not excused by disclosing additional payment of retainer

in its fee application); *see also In re Brandenburger,* 145 B.R. 624 (Bankr. D. S.D. 1992)

("[W]henever an attorney's fee arrangement with a debtor changes or whenever he receives a

retainer or other form of compensation not previously disclosed, the attorney must file a

supplemental disclosure of compensation.  A fee application is not a substitute for this

disclosure."); *In re Arthur and Joan Larsen,* 190 B.R. 713 (Bankr. D. Me. 1996) ("This court has

previously observed that full disclosure of counsel's fee arrangements with the debtor is

'essential to effective exercise of the court's power to pass on fee applications.'"); *In re Saturley,*

131 B.R. 509 (Bankr. D. Me. 1991) ("Anything less that the full measure of disclosure leaves

counsel at risk that all compensation may be denied . . . [w]hatever the explanation for disclosure

inadequacies, it reflects poorly on responsible counsel . . . .")

WZMP has failed to properly disclose the post-petition retainer.  Rule 2016(b) instructs

an attorney to file a supplemental declaration within 14 days of the payment of a previously

undisclosed payment.  FED. R. BANKR. P. 2016.  Per WZMP's own admission, WZMP disclosed

this payment more than a year after it was received.  (May MOR at 13-14; Supplemental

Declaration at 1.)  Moreover, WZMP did not disclose the post-petition retainer until it was

advised by the UST that it failed to timely file a supplemental declaration.  (UST Objection ¶ 13

n.2; *see* Supplemental Declaration ¶ 5.)

WZMP further admitted that the $30,000 post-petition retainer was not, in fact, paid

directly by Mr. Thomsons despite prior representations that it was.  (*Compare* Supplemental

Declaration ¶ 3, *with* Woods Declaration ¶ 8 n.2.)  Instead, the post-petition retainer was paid by

14

the Debtor's operating account and subsequently wired to WZMP from the Debtor's account. (Woods Declaration ¶ 8 n.2.)  Therefore, any disgorged fees would be returned to the debtor's estate.

Furthermore, WZMP violated the terms of its own Retention Order.  The Retention Order states in relevant part:

> WZMP shall be compensated in accordance with and will file interim and final fee applications for allowance of its compensation and expenses, upon notice and an appropriate hearing, **subject to sections 330 and 331 of the Bankruptcy Code**, **the Bankruptcy Rules and Local Rules of this Court** and applicable law . . . .

(Retention Order at 2-3 (emphasis added).)  Section 330 of the Bankruptcy Code requires approval from this Court for the payment of fees to a professional person.  11 U.S.C. § 330. Rule 2016(b) requires the filing of a supplemental declaration disclosing any payment not previously disclosed.  FED. R. BANKR. P. 2016.  By failing to request approval and disclose the post-petition retainer WZMP's conduct violated both section 330 of the Bankruptcy Code and Rule 2016(b).

Failure to disclose pursuant section 329(a) and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel.  *In re Nunez*, 598 B.R. 696, 708 (Bankr. E.D.N.Y. 2019); *In re Chez*, 441 B.R. 724, 731 (Bankr. D. Conn. 2010); *In re Chatkhan*, 496 B.R. at 695. A negligent failure to disclose may still result in the denial of all fees.  *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir.1995).  "Counsel's fee revelations must be direct and comprehensive.  Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient."  *In re Parklex Assocs., Inc.*, 435 B.R. 195, 209 (Bankr. S.D.N.Y. 2010) (quoting *In re Perrine,* 369 B.R. 571, 580 (Bankr. C.D. Cal.2007)).

It is within this Court's authority to deny all fees requested by WZMP.  However, the Court elects to require WZMP to **DISGORGE** the $30,000 post-petition retainer due to WZMP's insufficient disclosures regarding its payment, and violation of the applicable Bankruptcy Code and Bankruptcy Rule provisions and to **REDUCE** the overall compensation of WZMP instead of denying all compensation to WZMP.  WZMP does not appear to have intentionally failed to disclose the retainer.  Moreover, many of the cases that denied compensation to the Debtor's counsel involved bad acts that are not present in the instant matter. *See In re Chatkhan*, 496 B.R. at 687 (stating that "[debtor's counsel] disclosed that he applied the retainer to his fees without seeking, or obtaining, authorization as mandated by the Retention Order"); *In re Nunez*, 598 B.R. at 708 (Debtor's counsel failed to disclose that a retainer had been paid, counsel had not been retained by the Court, counsel claimed he was not representing the debtor in is bankruptcy proceeding, nonetheless counsel billed the debtor for services provided in the bankruptcy proceeding); *In re McCrary & Dunlap Const. Co., LLC*, 79 Fed. Appx. at 780 (noting that a "'technical breach' of the Code and Rules generally warrants a sanction far more lenient than full disgorgement and denial of all compensation."); *In re Downs*, 103 F.3d 472, 478 (6th Cir. 1996) (noting that sanctions must be handed out "with restraint and discretion.").

The UST recommended that the Court limit WZMP's compensation to $20,150.50, the amount of the prepetition retainer WZMP is holding.  (UST Objection at 15.)  Additionally, the UST recommends further reductions regarding specific time entries discussed below.  (*Id.*)

The Court requires WZMP to **DISGORGE** the $30,000 retainer and require it to be returned to the Debtor.  Further, the Court adopts the UST's recommendation to **REDUCE** WZMP's compensation to $20,150.50 as a result of WZMP's failure to disclose.

16

### B. WZMP Fees

The UST also objects to individual time entries submitted by WZMP in its application on grounds of lumping, vagueness, no benefit provided to the estate, excessive time, and services rendered after the appointment of the Chapter 11 Trustee. (UST Objection at 13-14.) "Lumping" is a recurring problem in many fee applications. Often general descriptions suffice of related entries suffice so as not to overly lengthen fee applications. While the UST has been characteristically careful and thorough in reviewing the WZMP application, the Court finds most of the time entries that describe together related work to be appropriate. Consequently, the Court overrules the lumping objections.

There are eight (8) entries objected to by the UST in the month of January 2025 for time by Adrienne Woods. The UST objects to each time entry claiming they pertain to services provided following the appointment of the Chapter 11 Trustee and provide no benefit to the estate. (UST Objection at 13-14.) Although the Chapter 11 Trustee had already been appointed, the services rendered by WZMP, totaling 2.9 hours and $1,957.50 are reasonable, necessary and provided a benefit to the estate.[2] By conferencing with the Chapter 11 Trustee, WZMP was likely able to reduce the time it would take for the Chapter 11 Trustee to become acquainted with the case. Counsel to the Chapter 11 Trustee agreed at the hearing and confirmed that WZMP was helpful to the Chapter 11 Trustee in getting up to speed in the case. Therefore, those fees are approved.

---

[2]    There appears to be a split in the case law whether debtor's counsel may be compensated following the appointment of a Chapter 11 Trustee. The UST has not cited case law in its argument indicating that this Circuit should preclude a debtor's counsel from compensation following the appointment of a Chapter 11 Trustee. Approval of a portion of the fees in this case is based on the particular circumstances here rather than establishing a general rule to be applied in all cases.

The final entry dated June 3, 2025, by Ms. Woods regarding time spent preparing the Weinberg Application and anticipated time spent preparing for and attending a hearing on the application is **DENIED**. The time entry reads as follows "[t]ime spent preparing fee application and anticipated time spent (4.5) preparing for and appearing at hearing on same (2.5)." There is an ambiguity as to where some of the "anticipated time" is spent in connection with the preparation of the fee application, or if the anticipated time is regarding the preparation and attendance of a hearing, or a combination of both. Rather than disallowing this portion of the Weinberg Application in its entirety, the Court **REDUCES** the fee application by $1,687.50 in connection with the time anticipated by Ms. Woods to be spent preparing for and attending a hearing; the Court is approving $3,037.50 of these fees.

Additionally, the requested fees for preparation of the fee application are greater than what this Court finds to be acceptable. The Court generally limits fees for preparing fee applications to 3 – 5 percent. *See In re Mesa Air Grp., Inc.*, 449 B.R. at 445 (stating that "the 3–5% range is a useful metric"). As it currently stands, WZMP's requested fees for preparing the fee application is approximately 6.8% of its total fees.[3] Therefore, the Court **REDUCES** the amount of fees that may be paid to WZMP in connection with the preparation of the fee application to $553.89, which is 3 percent of the total allowed compensation of $20,150.50 less the disallowed time of $1,687.50.

Therefore, the overall amount of fees approved for WZMP is $15,979.39.

### C. Vernon Consulting, Inc. Fees

The UST objected to two time entries from Vernon Consulting. (UST Objection at 14.) The first entry pertains to "[c]all with potential realtors" and the second pertains to the

---

[3]      This percentage was calculated using the total requested fees for the WZMP application less the disallowed time of $1,687.50 for the June 3, 2025. Therefore only $3,037.50 of the time entry were included in the calculation.

"[p]reperation of June MOR."  (*Id.*)  Turning to each time entry sequentially, the April 19,2024,

time entry pertaining to communication with realtors appears to be within the scope of Vernon

Consulting's retention.  Vernon Consulting is an experienced consulting firm with expertise in

financial advisory work.  (*Debtor's Application to Employ Vernon Consulting, Inc. as Financial

Advisor and Accountant for the Debtor in Possession*, ECF Doc. # 20 ¶ 8.)  Moreover, Vernon

Consulting's retention application contemplated that it would engage in, *inter alia*, "[f]inancial

advisory services in connection with any contemplated sale of assets, reorganization, or

liquidation under the Bankruptcy Code . . . ."  (*Id.* ¶ 11(h).)  Engaging with real estate agents in

connection with a sale transaction falls within the scope of Vernon Consulting's services to be

rendered for the benefit of the Debtor's estate.  Therefore, the Court **OVERRULES** the UST's

objection with respect to the April 19, 2024, time entry and **APPROVES** the requested fees of

$135.00 in connection with this time entry.

Turning to the July 29, 2024 time entry pertaining to the June MOR, the Court

**APPROVES** the requested fees of $855.00 in connection with this time entry.  Courts reviewing

fee applications have the benefit of perfect hindsight.  This, however, should not be used to

penalize attorneys.  *See In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 767 (Bankr.

E.D.N.Y. 2005) (observing that while courts must exclude excessive and unnecessary expenses

of time when reviewing fee applications, courts "must not penalize attorneys by viewing the

efforts of counsel with the benefit of '20/20 hindsight.'").  Instead, fee applications are judged on

whether the actions taken were reasonable at the time.  *In re Cenargo Intern., PLC*, 294 B.R.

571, 595 (Bankr. S.D.N.Y. 2003).  The June MOR was never filed.  (UST Objection at 14.)

However, Vernon Consulting and WZMP represent that the failure to file was the result of Mr.

Thomson's failure to cooperate and sign off on the June MOR.  (*See* Patt Declaration ¶ 9; Woods

Declaration ¶ 23.)  Therefore, the Court **APPROVES** the $855.00 in connection with the time spent preparing the June MOR to Vernon Consulting.

Therefore, the Court **APPROVES** the fees to Vernon Consulting and **OVERRULES** the objection of the UST.

## IV.    <u>CONCLUSION</u>

The Court directs WZMP to **DISGORGE** the $30,000 post-petition retainer, limit WZMP's fees to $20,150.50, and the **REDUCES** the Weinberg Application by $4,171.11, rendering the total amount of fees to be paid to WZMP as $15,979.39.

With respect to the Vernon Consulting Application, the Court **OVERRULES** the UST Objection and **APPROVES** Vernon Consulting its requested fees.

**IT IS SO ORDERED.**

Dated:    August 15, 2025
          New York, New York

                                 *Martin Glenn*
                              _____
                                 MARTIN GLENN
                       Chief United States Bankruptcy Judge