**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | |
| | In re CLST Enterprises, LLC, |
| | Debtor. |

<u>**NOT FOR PUBLICATION**</u>

No. 24-10596 (MG)

Chapter 11

**MEMORANDUM OPINION GRANTING THE CHAPTER 11 TRUSTEE'S MOTION**
**TO CONFIRM THE SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION**

*A P P E A R A N C E S :*

RIMON P.C.
*Counsel to Chapter 11 Trustee Kenneth P. Silverman*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By:    Brian Powers, Esq.
       Courtney M. Rowan, Esq.

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
*Counsel to 75 Street Servicing LLC*
200 West 41st Street, 17th  Floor
New York, NY 10036-7203
By:    Tracy L. Klestadt, Esq.
       Brendan M. Scott, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the Chapter 11 Trustee's motion to confirm the *Second*

*Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (the "Plan," ECF Doc.

# 121) of CLST Enterprises, LLC (the "Debtor") along with a supplement to the Plan (the

"Supplement," ECF Doc. # 128).  The Plan represents the second iteration of the Trustee's

proposed Plan.  (*See* ECF Doc. # 102.)  Previously, on November 5, 2025, this Court entered an

order (the "Disclosure Statement Order," ECF Doc. # 124) approving the disclosure statement

(the "Disclosure Statement," ECF Doc. # 122) which was filed in connection with the Plan.

Both the deadline to vote on the Plan (the "Voting Deadline") and the deadline to object to

Confirmation (the "Objection Deadline") were December 4, 2025, at 4:00 pm.  (Disclosure

Statement Order ¶¶ 3, 8.)  No objections were filed to the confirmation of the Plan.  The Trustee

filed a Ballot Tabulation Report on December 11, 2025 (Voting Ballot Tabulation Report, ECF

Doc. # 131-2) and associated Memorandum of Law in Support of Confirmation of the Plan (the

"Memorandum of Law," ECF Doc. # 132).

As the requirements of section 1129 are satisfied, the Court **CONFIRMS** the Plan.

## I.    BACKGROUND

### A.  General Background

On April 8, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern

District of New York.  (Disclosure Statement at 5.)  The Debtor is a New York limited liability

company, whose members consist of Carl Thomson and Margaret Thomson (together, the

"Thomsons" or "Members"), who owned, and prior to the appointment of the Trustee, managed

real property known as and located at 19 E. 75th Street, New York, New York 10021 (the "Real

Property").  (*Id* at 4)

On January 2, 2025, the Court entered the *Order Directing the Appointment of a Chapter

11 Trustee* (ECF Doc. # 53).  (*Id.* at 5.)  On January 6, 2025, the Office of the United States

Trustee filed the Application for the Appointment of Kenneth P. Silverman, Esq., as Chapter 11

Trustee and Affidavit of Disinterestedness of the Trustee (ECF Doc. # 54).  (*Id.*)  Additionally,

on January 6, 2025, Kenneth P. Silverman, Esq., was appointed the chapter 11 trustee for the

Debtor's estate (ECF Doc. # 56).  (*Id.*)

On March 28, 2025, the Court entered an order authorizing and approving the Trustee's settlement with 75 Street Servicing LLC, a secured creditor of the Debtor, which, among other things, provided for a carve-out for payment of the Trustee's retained professionals and 75 Street Servicing's consent to the sale of the Real Property.  (*Id.* at 7-8.)

Also on March 28, 2025, this Court entered an order granting the Trustee's motion pursuant to Bankruptcy Code § 363(f) approving (i) the terms and conditions of sale for the Debtor's right, title, and interest in Real Property, (ii) certain auction procedures for the auction sale, and (iii) the form, time and scope of the notice of the auction sale (ECF Doc. # 73) and an order authorizing the removal of all occupants and personal property remaining in the Real Property (ECF Doc. # 76).  (*Id.*)  On October 30, 2025, the Court approved the sale of the Real Property for Eight Million Three Hundred Fifty Thousand and 00/100 ($8,350,000.00) Dollars (Disclosure Statement Order).

On November 5, 205, the Court approved the adequacy of the Second Amended Disclosure Statement (ECF Doc. # 124).

**B.  Overview Of the Second Amended Plan**

    1.  <u>Treatment of Creditors</u>

The Plan provides that the Sale of the Real Property will be used to satisfy all Allowed Secured, Administrative, and Priority Tax Claims.  (Disclosure Statement at 3.)  The Plan further provides for the liquidation of all of the Debtor's remaining assets, the proceeds of which will be used, along with the proceeds from the sale of Real Property, to make all distributions pursuant to the terms of the Plan, including to unsecured creditors.  (*Id.*)  Below is a chart outlining the classification and treatment under the Plan:

| Class | Nature of Claims | Treatment | Voting |
|---|---|---|---|
| 1 – Priority (Non-Tax) Claims | Consists of all Priority Claims against the Debtor which are not tax claims. | Each holder of an Allowed Class 1 Claim shall receive payment of the Allowed Class 1 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date | Class 1 is Unimpaired and have been deemed to accept |
| 2 – Pre-Petition Lender Secured Claim | Consists of all Secured Claims against the Debtor | Holders of Allowed Secured Claims will receive payment in full of such Allowed Secured Claim in full and final satisfaction, settlement and discharge and in exchange for each Allowed Secured Claim. | Class 2 is Unimpaired and have been deemed to accept |
| 3 – General Unsecured Claims | Consists of all General Unsecured Claims held against the Debtor other than Class 4 Claims | Holders of Allowed Class 3 Claims will receive (i) their Pro Rata Share of any amounts remaining of the Carve Out, and (ii) if not paid in full from the Carve Out, on a Pro Rata basis together with Class 4, their share of the Unsecured Creditor Funds. | Class 3 is Impaired; they did not vote on the plan and are deemed to REJECT the plan |
| 4 – Pre-Petition Lender Deficiency Claim | Consists of any outstanding amount of Pre-Petition Lender Claim after payment in full to Class 2 Secured Claims | Holders of Class 4 Claims will receive a Pro Rata basis together with Class 3, their share of the Unsecured Creditor Funds with the exception of the Carve Out | Class 4 is Impaired; Class 4 voted to ACCEPT the plan |
| 5 – Interests in the Debtor | Consists of all the Interests in the Debtor | To the Extent that any funds are remaining after payment of all statutory fees, Administrative Claims, Priority Tax Claims, and Claims in Classes 1, 2, 3, and 4, Holders of Class 5 Interests shall receive the remaining funds on a Pro Rata basis | Class 5 is Impaired; they did not vote and are deemed to REJECT the plan |

(Plan at 11-12; Voting Ballot Tabulation Report.)  The term "Carve Out" is defined in the Disclosure Statement as "certain amounts to be distributed from the Net Sale Proceeds as set forth in the Pre-Petition Lender Stipulation, plus One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars."  (Plan at 3.)

The Disclosure Statement provides for the following recoveries for each class of claims:

| Classes of Claims | Description of Proposed Distributions Under the Plan | Est. Dollar Amount in Class | Estimated Recovery |
|---|---|---|---|
| Class 1 – Priority (Non-Tax) Claims | Unimpaired - Allowed Priority Claims will be paid, in full, their Allowed amount in Cash on the Effective Date or as soon as reasonably practicable after the Effective Date. | The Trustee does not believe there are any claims in this class. | 100% |
| Class 2 – Pre-Petition Lender Secured Claim | Unimpaired – Holders of the Pre-Petition Lender Secured Claim will be paid in full. | $8,562,279.03 | 100% |
| Class 3 – General Unsecured Claims | Impaired - Allowed General Unsecured Claims will be paid approximately 100% of their Allowed amount, without interest, in Cash on the later of the Effective Date or ten days after an Order allowing the Claim becomes a Final Order.[1] | Anticipated to be approximately $500.00 based on the filed Claims. | 100% |
| Class 4 – Pre-Petition Lender Deficiency Claim | Impaired – Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, and discharge and in exchange for each Allowed Class 4 Claim, on a Pro Rata basis together with Class 3, their share of the Unsecured Creditor Funds with the exception of the Carve Out. | $699,472.82 | Unknown |
| Class 5 – Interests in the Debtor | Impaired – To the extent that funds are available after full payment of all statutory fees, Administrative Claims, Priority Tax Claims and Claims in Classes 1, 2, 3, and 4, the holders of interests shall receive the remaining funds on a Pro Rata basis. | | Unknown |

---

[1]     This is one of the two major changes in the Second Amended Plan and Amended Disclosure Statement, the other being the additional information regarding the sale of the Real Property.  The estimated recovery of Class 3 claims in the prior iteration of the Disclosure Statement was "greater than 1%."  (ECF Doc. # 110 at 13.)

(Disclosure Statement at 10-11.)  The Disclosure Statement does not explicitly state the value of the Pre-Petition Lender's Secured Claim in Class 2.  The Pre-Petition Secured Lender, 75 Street Servicing, has a claim against the Debtor for $8,562,279.03, which is predicated upon (i) a prepetition note executed by the Debtor, (ii) a mortgage against the Real Property securing the note, and (iii) a judgment of foreclosure obtained by the 75 Street Servicing against the Debtor in New York State Supreme Court, in the amount of $7,346,196.91 plus post-judgment interest accruing at 9% per annum.  (*Trustee's Motion Pursuant to 9019(a) and Bankruptcy Section 105 Seeking Approval of the Stipulation of Settlement by and between the Trustee and 75 Servicing LLC* ¶ E, ECF Doc. # 61).  Class 4 was ultimately valued at $699,472.82.  (Voting Ballot Tabulation Report.)

2. <u>Plan Funding</u>

The Plan will be paid out primarily from the $8,300,000 from the Real Property sale. (Plan at 13.)

3. <u>Governance</u>

The Chapter 11 Trustee will be named the Plan Administrator (*see* Plan Supplement) and continue to manage the Debtor until the Plan's effective date.  (Plan at 15.)  After the effective date, the Trustee, on behalf of the Post-Confirmation Debtor, will accept and hold Cash to be used for distributions under the Plan and the costs of administering the plan.  Upon the close of the Chapter 11 case the Trustee will be relieved of his duties.  (*Id.*)

4. <u>Executory Contracts, Unexpired Leases</u>

The Plan covers the treatment of counterparties to the Debtors' executory contracts and unexpired leases.  (Plan at 17-18.)  Upon the effective date of the Plan any executory contract or unexpired lease shall be deemed automatically rejected.  (*Id.* at 17.)

5. <u>Distribution</u>

The plan has a section on the procedures governing distributions (*see Id.* at 19-21), with such distributions being made by the Trustee or Post-Confirmation Debtor as soon as reasonably practicable after the effective date of the Plan. (*Id.* at 19.)

6. <u>Disputed Claims</u>

The Plan provides procedures on allowance of and objections to claims after the Plan's effective date. (*Id.* at 21-23.) The Plan provides for a method to file a claim based on rejection of an executory contract/unexpired lease. (*Id.* at 18.)

7. <u>Conditions Precedent</u>

Among the conditions precedent to the occurrence of the Plan's effective date is the approval of this Court, the Court entering an Order approving the Sale of the Real Property, and that the Sale will have substantially closed. (*Id.* at 24.) The Sale Order has been entered. (ECF Doc # 123.)

8. <u>Settlement, Injunction, and Exculpation Provisions</u>

The Plan purports to settle all Allowed Claims of the members of each Class of creditors. (*Id.* at 25.) The Plan also enjoins all entities from beginning a cause of action against the Plan after the confirmation date (*id* at 28) and exculpates the Trustee and professionals retained by him from liability relating to the formation of the Plan (*id* at 25-26).

**C. Votes**

According to the Voting Ballot Tabulation Report filed by the Debtor, they received only one vote on the plan from the three voting classes, from the Secured Creditor regarding its deficiency claim:

| Name | Class | Amount | Accept/Reject | Date Received |
|---|---|---|---|---|
| 75 Street Servicing LLC | Class 4 | $699,472.82 | Accept | 12/3/2025 |
| | | | | |
| Class 3 total accepting | 0 | $0.00 | 0 | |
| Class 3 total rejecting | 0 | $0.00 | 0 | |
| | | | | |
| Class 4 total accepting | 1 | $699,472.82 | 1 | |
| Class 4 total rejecting | 0 | $0.00 | 0 | |
| | | | | |
| Class 5 total accepting | 0 | $0.00 | 0 | |
| Class 5 total rejecting | 0 | $0.00 | 0 | |

### D. Memorandum of Law

The Debtor's Memorandum of Law was submitted with the Voting Ballot Tabulation Report and discusses why the Court should confirm the Plan. The Memorandum of Law notes that the Plan has been approved by the Debtor's largest Creditor, 75 Street Servicing, and the sale proceeds of the Real property will be used to satisfy all Allowed Priority (Non-Tax) Claims and Secured Claims. (Memorandum of Law at 2.)

## II.    ANALYSIS

To obtain confirmation of a plan of reorganization, a debtor must establish by a preponderance of the evidence that the plan has satisfied the requirements set forth under section 1129 of the Bankruptcy Code. *See JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns, Inc.)*, 419 B.R. 221, 244 (Bankr. S.D.N.Y. 2009) (finding that the plan proponent bears the burden of establishing compliance with the factors set

forth in section 1129 by a preponderance of the evidence); *see also In re Young Broad. Inc.*, 430

B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (same).

**A. Section 1129(a)**

1. <u>Section 1129(a)(1): Meets Requirements</u>

Section 1129(a)(1) requires that the Plan comply with applicable provisions of the

Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The Plan, therefore, must satisfy sections 1122 and

1123 of the Bankruptcy Code. *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In

determining whether a plan complies with section 1129(a)(1), reference must be made to Code

§§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of

reorganization").

*a. Section 1122: Meets Requirements*

Section 1122 governs the classification of claims in plans. Section 1122 states:

> (a) Except as provided in subsection (b) of this section, a plan may place a
> claim or an interest in a particular class only if such claim or interest is
> substantially similar to the other claims or interests of such class.

> (b) A plan may designate a separate class of claims consisting only of every
> unsecured claim that is less than or reduced to an amount that the court
> approves as reasonable and necessary for administrative convenience.

Claims or interests may only be placed in a particular class if such claims or interests are

"substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). "A

plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is

a reasonable basis for the classification scheme and if all claims within a particular class are

substantially similar." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr.

S.D.N.Y. 1992); *see also Aetna Cas. & Sur. Co. v. Chateaugay Corp. (In re Chateaugay Corp.)*,

89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straight-forward rules:

Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason.")

Article 3 of the Plan classifies Claims into five individual classes: (1) Class 1, containing Priority (Non-Tax) Claims (which the Debtor believes there are none); Class 2, containing 75 Street Servicing's secured claim; (3) Class 3, containing all General Unsecured Claims; (4) Class 4, containing the remainder of 75 Street Servicing's claim that is unsatisfied after the payout to Class 2; and (5) all interests in the Debtor, held by the Thompsons.  The claims in each class are all sufficiently similar and all classes are separated for a legitimate reason.  75 Street Servicing's claim being split between Class 2 and Class 4 is proper as Class 4 is only to handle any residual amount owed to 75 Street Servicing after the funds from the Sale are satisfied – the unsecured claim must be classified separately from the secured.  *See In re Matter of 183 Lorraine St. Assocs.*, 198 B.R. 16, 28 (E.D.N.Y. 1996) ("the deficiency claim is an unsecured claim which cannot be placed in the same class as the secured portion of the undersecured creditor's claim."); *see also In re D & W Realty Corp.,* 165 B.R. 127, 129 (S.D.N.Y.1994) ("Manifestly, a secured claim and an unsecured claim, even those of the same creditor, are about as dissimilar as two claims can be.").

Accordingly, the Plan **MEETS** the requirements of section 1122.

### b.  Section 1123(a):  Meets Requirements

A plan must fulfill the following eight requirements to satisfy 11 U.S.C. 1123(a):

(1) designate classes of claims and interests;
(2) specify unimpaired classes of claims and interests;
(3) specify treatment of impaired classes of claims and interests;
(4) provide for equality of treatment within each class;
(5) provide adequate means for the plan's implementation;
(6) provide for the prohibition of non-voting equity securities and provide an appropriate distribution of voting power among the classes of securities;
(7) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to

the manner of selection of the reorganized company's officers and directors; and

(8) in a case in which the debtor is an individual, provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan.

Article 3 of the Plan designates five classes of claims and interests, specifies which classes are unimpaired, specifies how each class will be treated, and provides that each claim within a class will be treated the same way, meeting the requirements of subsections 1-4.

Article 5 of the Plan sets out the means of plan implementation, including details regarding how the Sale proceeds of the Real Property will fund the Plan and provisions granting the post-effective-date debtors with the power to engage in other transactions in furtherance of the Plan.  Furthermore, the conditions precedent to confirmation (in Article 9) have either already occurred (in the case the Sale of the Real Property) or will occur prior to the Plan's effective date.

The requirements of sections 1123(a)(vi) and (vii) are not implicated by the Plan because it is a liquidating plan.

Section 1123(a)(viii) does not apply here because the Debtor is not an individual.

Accordingly, the Plan **MEETS** the requirements of section 1123(a).

### c.  Section 1123(b): Meets Requirements

Section 1123(b) of the Bankruptcy Code sets forth provisions that may be incorporated into a chapter 11 plan.  The Plan raises some such non-mandatory provisions, and each is consistent with section 1123(b).

<u>Section 1123(b)(1)</u>

Section 1123(b)(1) provides that a plan may impair or leave unimpaired any class of claims, which is consistent with the Debtor's impaired/non-impaired treatment under the Plan. (*See* Plan, Article III.)

<u>Section 1123(b)(2)</u>

The Plan proposes that all Executory Contracts and Unexpired Leases are to be rejected. (*See* Plan, Art. VI.)  This is consistent with section 1123(b)(2) which allows "assumption, rejection, or assignment," pursuant to other sections of the Code (i.e., section 365) and requirements in the caselaw.  *See In re Child World, Inc.*, 147 B.R. 847, 850 (Bankr. S.D.N.Y. 1992) (stating that the standard for assumption or rejection of contracts is business judgment).

<u>Section 1123(b)(3)</u>

Section 1123(b)(3) allows plans to address the settlement, retention, and enforcement of claims belonging to a debtor or estate.  The Plan contains the settlement of all Claims and Interests and controversies pursuant to the Plan.  (*See* Plan, Art. X.)  According to the Debtors, the settlement "(a) saves the Trustee and the Debtor's estate the costs and expenses of prosecuting disputes, the outcome of which is likely to consume substantial resources of the Debtor's estate and require substantial time to adjudicate, and (b) facilitates the creation and implementation of the Plan, which benefits the Debtor's estate, stakeholders and all parties in interest."  (Memorandum of Law at 25.)

<u>Section 1123(b)(6)</u>

Section 1123(b)(6) permits a Debtor to "include any other appropriate provision not inconsistent with the applicable provisions of this title."  11 U.S.C. § 1123(b)(6).  The Debtor has included both injunction and exculpation provisions in the plan.  Both the injunction and

exculpation provisions have been found appropriate by Courts when they are fair and equitable, necessary to successful reorganization, and integral to the plan. *See, e.g. In re Bally Total Fitness of Greater New York, Inc.*, 2007 WL 2779438, at *8 (Bankr. S.D.N.Y. September 17, 2007). Both provisions are contained in Article 10 of the Plan.

The Injunction Provision enjoin all persons and entities from bringing any actions against the Debtor's estate or the Trustee for any claim or interest pursuant to the Plan that accrued prior to the Confirmation date. (Plan at 28.) The Debtors contend that the injunctions are necessary to protect and allow the Trustee and estate to implement the provisions of the Plan after confirmation, while also being narrowly tailored by being limited to only claims pursuant to the Plan itself. (Memorandum of Law at 26.) The Debtor seems to be correct – the injunction only covers claims related to the Plan prior to confirmation, and additional claims brought after Confirmation would hamper efforts by the Trustee to implement its provisions.

The Exculpation Provisions give exculpation for the Trustee and any retained professionals of the Trustee for claims arising out of conduct occurring after the Petition Date through the Effective Date. (Plan at 25-26.) The exculpation provision carves out acts or omissions that are determined by a Final Order to have constituted gross negligence, fraud, or willful misconduct. Exculpation provisions are permissible when they are important to a debtor's plan or where the exculpated party has provided substantial consideration to a debtor's reorganization. *See In re Chemtura*, 439 B.R. 561, 610-11 (Bankr. S.D.N.Y. 2010) (citing *In re DBSD*, 419 B.R. 179, 218 (Bankr. S.D.N.Y. 2009); *see also In re Residential Cap. LLC*, 2013 WL 12161584, at *13 (Bankr. S.D.N.Y. Dec. 11, 2013) (order confirming plan contained exculpations for parties "instrumental to the successful prosecution of the Chapter 11 Cases or their resolution pursuant to the Plan, and/or provided a substantial contribution to the Debtors.").

In determining whether to approve exculpation provisions, courts also consider whether the beneficiaries of the exculpation participated in good faith in negotiating the plan and bringing it to fruition, and whether the provision is integral to the plan. *See In re BearingPoint, Inc.*, 453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011) ("[E]xculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties, or simply wish to second guess the decisionmakers[.]").

The requirements for exculpation provisions seem to have been met here, as they come as part of the overall plan process and will limit liability against those who drafted of the Plan, the Trustee and his retained professionals. The Debtor submits that the exculpation provision set forth in the Proposed Plan is reasonable, appropriate, and entirely consistent with applicable law and should be approved. The Debtor appears to be correct.

Given the above, the Plan **MEETS** the requirements of section 1123(b).

2.  <u>Section 1129(a)(2): Meets Requirement</u>

Under section 1129(a)(2), the plan proponent must comply "with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). Courts have interpreted the section 1129(a)(2) requirement to include satisfaction of the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code. *In re WorldCom, Inc.*, 2003 WL 23861928, at *25-26 (Bankr. S.D.N.Y. 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986).

a.  *Section 1125: Meets Requirements*

Section 1125 of the Bankruptcy Code provides:

(b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation,

14

there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

(c) The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.

Here, the Court approved the Disclosure Statement as providing adequate information. (Disclosure Statement Order.) The Disclosure Statement contains a concise and easy to read overview of the Plan, which includes a summary of Plan terms and the distribution scheme. In addition, the Disclosure Statement describes all materially important aspects of the Plan. After the Court approved the Disclosure Statement, the Debtor transmitted solicitation materials in accordance with the Court's order. (ECF Doc. # 125.)

Therefore, the Plan **MEETS** the requirements of section 1125.

### b. Section 1126: Meets Requirements

Section 1126 indicates that a holder of a claim or interest may accept or reject a plan, outlines the classes entitled to vote on proposed plans, and describes how it is determined whether a class of claims or interests either accepts or rejects a plan. "A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c). "Only creditors that actually voted count in determining whether the requisite majorities in number and amount are met." 7 COLLIER ON BANKRUPTCY ¶ 1126.04. "[A] class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation . . . is not required." 11 U.S.C. § 1126(f).

Section 1126 indicates that a creditor may accept or reject a plan and delineates the classes entitled to vote on proposed plans. The Plan entitles the appropriate parties (Classes 3, 4,

and 5) the right to vote on the plan.  Classes 1 and 2 are deemed to accept the Plan.  Thus, the requirements of section 1126 are **MET**.

      3.  Section 1129(a)(3): Meets Requirements

Section 1129(a)(3) requires the plan to be "proposed in good faith and not by any means forbidden by law."  11 U.S.C § 1129(a)(3).  This means that plans must have been "proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected."  *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).  Courts have held that a plan is considered proposed in good faith "if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code."  *In re The Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84 B.R. at 907).  "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan."  *Leslie Fay*, 207 B.R. at 781 (citations omitted); *Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996 WL 694421, at *9 (S.D.N.Y. Dec. 4, 1996) ("failure to propose a plan in good faith occurs when the Plan is not proposed with honesty, good intentions, and to effectuate the reorganization of the enterprise, but rather for some other motive") (citing *Kane*, 843 F.2d at 649).

The Trustee contends that the Plan has been proposed in good faith and there have been no objections asserting otherwise.  Additionally, the Debtor's largest creditor by far has voted to accept the plan.  Accordingly, the Plan **MEETS** the requirements of Section 1129(a)(3).

      4.  Section 1129(a)(4): Meets Requirements

Section 1129(a)(4) mandates that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has

been approved by, or is subject to the approval of, the court as reasonable.

This requires a plan to provide for the disclosure and Court approval of payment of any fees promised or received in connection with the chapter 11 case. *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.03[4].

Article 2 of the Plan provides for the payment in full of allowed administrative expense claims in cash and provides procedures for holders of administrative expense claims and fee claims (of professionals) to apply for payment of fees on such claims. The Plan also provides that Administrative Claims and Expenses are subject to approval of the Bankruptcy Court. (Plan at 9.) Accordingly, the requirements of section 1129(a)(4) are **MET**. *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990) (as long as fees, costs and expenses are subject to final approval of the court, section 1129(a)(4) is satisfied).

     5.  <u>Section 1129(a)(5): Not Applicable</u>

Section 1129(a)(5) requires that:

(A) **(i)** The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and **(ii)** the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

Here, the Plan in a liquidating plan so the requirements of section 1129(a)(5) do not apply.

     6.  <u>Section 1129(a)(6): Not Applicable</u>

Under section 1129(a)(6), if the plan provides for changes in rates controlled by governmental agencies, the rate change must have been pre-approved by the relevant agency. 7

COLLIER ON BANKRUPTCY ¶ 1129.03[6].  This requirement applies to debtors who are "utilities or other entities whose ability to price their products or services are subject to regulation by governmental agencies." *Id*.

Here, the Debtor is not a regulated entity.  Accordingly, the requirements of section 1129(a)(6) are not applicable to the Plan.

### 7.   Section 1129(a)(7): Meets Requirements

Section 1129(a)(7)—the so-called "best-interests" requirement—mandates that each creditor or interest impaired under a plan must either have (i) accepted the plan, or (ii) would receive at least as much under the plan as it would under a chapter 7 liquidation.  11 U.S.C. § 1129(a)(7); 7 COLLIER ON BANKRUPTCY ¶ 1129.03[7].

Class 4 has voted to accept the Plan.  In addition, conversion to a chapter 7 liquidation would come with additional administrative expenses and lead to lesser recoveries for the remining impaired classes who have not voted on the Plan.  Therefore, the Plan **MEETS** the requirements of section 1129(a)(7).

### 8.   Section 1129(a)(8): Satisfied

Pursuant to section 1129(a)(8), the plan may be confirmed where either (i) the class of creditors has accepted the plan; or (ii) the class of creditors is not impaired under the plan.  11 U.S.C. § 1129(a)(8).  A class of creditors is considered to have accepted a plan when at least two-thirds in amount and more than one-half in number of allowed claims of such class accept the plan, measured out of those claims that vote.

If a plan otherwise satisfies Section 1129(a), including the requirement that at least one impaired class of creditors has accepted the plan under § 1129(a)(10), the plan may be confirmed pursuant to Section 1129(b).  7 COLLIER ON BANKRUPTCY ¶ 1129.03[8].

Given that both Class 3 and 5 have not voted on the Plan, the Plan does not meet the requirements of section 1129(a)(8).  However, the Plan is still confirmable pursuant to a cramdown as discussed below.

### 9.   Section 1129(a)(9): Meets Requirements

Section 1129(a)(9) requires that, except to the extent that the holder of a particular claim agrees to a different treatment of such claim, the plan provide that:

> (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive . . . cash equal to the allowed amount of such claim;
> (B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder . . . will receive -- (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;
> (C) with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive . . . regular installment payments in cash -- (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief . . . and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan . . . .

11 U.S.C. § 1129(a)(9).

Section 1129(a)(9)(A) requires that claims identified in 507(a)(2) and (3) are paid on the effective date of a plan.  Section 507(a)(2) specifies administrative expenses allowed under section 503(b).  Section 507(a)(3) specifies unsecured claims in involuntary cases.  Article 2 of the Plan states that administrative claims will be "paid the full amount of such Allowed Claim in Cash: (a) on or as soon as reasonably practicable after the Effective Date."  (Plan at 9.)  Given that the plan provides for the payment of administrative claims in full, the requirements of 1129(a)(9)(A) are satisfied.

Section 1129(a)(9)(C) requires that each holder of a section 507(a)(8) priority tax claim receive installment payments in cash over a period not longer than five years after the order for relief a value equal to the allowed amount of such claim as of the effective date of the plan.  Like with the administrative claims, the Plan states that the priority tax claims will be paid in cash as soon as reasonably practicable after the Effective Date and no more than five (5) years after the Petition Date.  (Plan at 10.)  The requirements of section 1129(a)(9)(C) are met.

Given the above, the Plan **MEETS** the requirements of section 1129(a)(9).

### 10. Section 1129(a)(10): Meets Requirements

Section 1129 requires at least one class of impaired creditors—if there are any impaired creditors—to have accepted the Plan.  As Class 4 has voted to accept the plan, the requirements of section 1129(a)(10) have been **MET**.

### 11. Section 1129(a)(11): Meets Requirements

Section 1129(a)(11) requires the Court to determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  That requirement, commonly known as the "feasibility" standard, requires that "the Plan is workable and has a reasonable likelihood of success."  *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. at 762.  "It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success."  *Id.*  (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11], at 1129-54 (15th ed. 1991)); *see also In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) ("[T]he plan proponent need only demonstrate that there exists the reasonable probability that the provisions of the Plan can be performed") (internal quotation omitted).  "Although it is perfectly legitimate for a Chapter 11

debtor to adopt a plan that liquidates all or part of its assets, logic and authorities suggest that the feasibility analysis under such plans will vary somewhat from that used in 'true' reorganizations. . . . In particular, the courts in these [liquidation] cases were concerned over the absence of a reliable cash flow or proven earning power that could ensure regular payments to the creditors." *Resolution Trust Corp. v. Wood (In re Wood)*, 1991 WL 332637, *3 (W.D. Va. 1991).

The Plan has no ongoing payments, and payments under the plan will be paid out using the proceeds of the Real Property Sale, of which this Court has already guaranteed, as well as any additional Assets of the Debtor. The Trustee believes this will be sufficient to make all payments as required by the Plan. Therefore, the requirements for Section 1129(a)(11) have been **MET**.

### 12. Section 1129(a)(12): Meets Requirements

Section 1129(a)(12) requires that fees payable under 28 U.S.C. § 1930, as determined by the court at a hearing on confirmation of a plan, have been paid or are provided under the plan to be paid on its effective date.

The Plan sets out that all fees "any applicable interest payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid by the Trustee on the Effective Date of the Plan." (Plan at 30.)

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(12).

### 13. Sections 1129(a)(13)-(16): Not Applicable

Section 1129(a)(13) requires a plan to provide for retiree benefits at levels established pursuant to section 1114. 11 U.S.C. § 1129(a)(13). The Debtor does not have any obligation to pay retiree benefits. Accordingly, section 1129(a)(13) does not apply.

Section 1129(a)(14) relates to the payment of domestic support obligations. 11 U.S.C. § 1129(a)(14). Section 1129(a)(14) does not apply.

Section 1129(a)(15) applies in cases in which the debtor is an "individual." It provides as follows:

> (15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
>> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15).  Section 1129(a)(15) does not apply as the Debtor is not an individual.

Section 1129(a)(16) states that "all transfers of property under [a] plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16). "This provision limits the permissible transfers by any nonprofit entity[.]" 7 COLLIER ON BANKRUPTCY ¶ 1129.02. The Debtor is not a nonprofit entity. Therefore, section 1129(a)(16) does not apply.

### B. Section 1129(b): Meets Requirements

When at least one class of impaired creditors votes for confirmation of a plan, pursuant to section 1129(b) the court may "cram down" a plan over the dissent of another impaired class. Cramdown is permitted so long as a plan (i) does not discriminate unfairly; and (ii) is fair and equitable.  As all other requirements to section 1129(a) have been met except for 1129(a)(8), a cramdown analysis can proceed.  As the following will explain, the Plan meets the requirements of 1129(b).

1.   The Plan Does Not Discriminate Unfairly

Unfair discrimination includes instances where the plan discriminates among creditors with equal non-bankruptcy priority.  7 COLLIER ON BANKRUPTCY ¶ 1129.04[3][b][ix].  Unfair discrimination occurs when "similarly situated classes are treated differently without a reasonable basis for the disparate treatment."  *In re Worldcom, Inc.*, 2003 WL 23861928, at *59; *see also In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 63 (Bankr. S.D.N.Y.1990).

Class 4 voted to accept the Plan, but Class 3 did not.  Both classes are made up of general unsecured creditors.  Class 3 creditors are entitled to Carve Out funds from the sale of the Real Property, while Class 4 will not.  This means that Class 3 distributions will be increased due to the additional funds available to them when compared to Class 4.  There is a reasonable basis for this disparate treatment, as Class 4 is the deficiency claim for 75 Street Servicing, who will already be partially satisfied through their Class 2 claim.  Additionally, Class 4 has voted to accept the plan.  Accordingly, the Plan does not unfairly discriminate among classes of claims.

2.   The Plan is Fair and Equitable

Courts will consider a cramdown fair and equitable if the absolute priority rule is followed.  That is, if no claim that is junior to the dissenting class benefits from the proposed plan.  7 COLLIER ON BANKRUPTCY ¶ 1129.04[4][a]; *see also In re Charter Commc'ns*, 419 B.R. at 269 ("the absolute priority rule is violated when an equity interest holder 'leapfrogs' unsecured creditors and receives property on account of a junior interest.")  Absolute Priority is followed here with exception to the Carve Out provision.  With the Carve Out, the Class which would be harmed by the Carve Out, Class 4, has voted to approve the plan.  Given that and that Class 3 will not receive a better distribution than absolute priority requires, the Plan is fair and equitable.

23

### C.  Section 1129(c): Meets Requirements

Section 1129(c) of the Bankruptcy Code provides that a court "may only confirm one plan." 11 U.S.C. § 1129(c).  The Plan submitted is the only plan the Debtor is seeking to confirm in this case.  Therefore, the Plan **MEETS** the requirements of section 1129(c).

### D.  Section 1129(d): Not Applicable

Section 1129(d) provides that "on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 4 of the Securities Act of 1933."  Here, no such objection was raised.  Thus, section 1129(d) does not apply.

## III.    CONCLUSION

Given the above, the Court **CONFIRMS** the Plan.

The Trustee shall submit an Order Confirming the Plan.

Dated:     December 19, 2025
               New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge